UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MYRON EUGENE WOOD,

                Petitioner,

v.                                       Case No. 04-10049
                                       Honorable David M. Lawson

DOUGLAS VASBINDER,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Myron Wood, currently confined at Kinross Correctional Facility in Kincheloe, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner was convicted of possession of 650 or more grams of cocaine, Mich. Comp. Laws § 333.7403(2)(a)(i), and possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b, following a jury trial in the Oakland County, Michigan circuit court in 2001. He was sentenced to two years on the felony firearm charge and life without parole on the drug charge under the habitual drug offender statute, Mich. Comp. Laws § 333.7413(1). The petitioner alleges that he is in custody in violation of the Constitution because the trial venue was changed to Oakland County instead of Wayne County; his right to a speedy trial was violated; his trial counsel had an undisclosed conflict of interest; the prosecutor engaged in misconduct by introducing irrelevant testimony about crack cocaine; and his sentence is indeterminate and cruel or unusual. The respondent filed a response to the petition asserting that the claims lack merit. The Court agrees, and the petition will therefore be denied.

I.

On October 23, 1998, police officers from Farmington Hills, as part of a continuing multi-

jurisdictional narcotics investigation, were on the lookout for the petitioner, who was expected to be driving a tan 1998 Chevy Blazer near the intersection of 8-Mile Road and Greenfield Road. Detroit police officers, informed of the investigation, spotted a vehicle in the area that matched the description and observed it run a stop sign. The officers pursued the Blazer into a driveway. The petitioner, who was the sole occupant, exited and ran. One of the officers in pursuit saw the petitioner toss away a handgun, which was subsequently determined to be loaded. With the assistance of a Farmington Hills officer, the petitioner was stopped and arrested within a few blocks. The Blazer was seized and searched. It contained a 1,007-gram brick of powder cocaine and $6,000 in cash. The petitioner was immediately turned over to the Farmington Hills police.

The petitioner was released the next day without being charged after he agreed to act as an informant and assist in ongoing investigations. The officers later decided that the petitioner had not abided by the unrecorded agreement, and in March 1999 he was arrested and charged in Macomb County with the charges mentioned above as well as possession with intent to deliver more than 650 grams of cocaine and conspiracy to distribute over 650 grams of cocaine, Mich. Comp. Laws § 333.7401(2)(a). After certain statements made by the petitioner were suppressed, the prosecutor moved to change venue because no further evidence tied the plaintiff to Macomb County. The conspiracy charge was dismissed, and the case was transferred to Oakland County circuit court. Trial began on April 26, 2001. The defense theory, argued in opening and closing statements, was that the police officers who testified were not credible and had set up the petitioner to force him to act as an informant. On May 3, 2001, the petitioner was convicted of simple possession of cocaine and felony firearm but acquitted of possession with intent to distribute cocaine. He was sentenced on June 20, 2001.

The petitioner raised the following six issues in his direct appeal to the Michigan Court of Appeals:

I.      The trial court in Macomb County abused its discretion in granting the prosecutor's motion for change of venue from Macomb County to Oakland County, when the prosecutor failed to show "good cause" to justify the transfer of the case to Oakland County.

II.     The trial court abused its discretion in denying defendant's motion for change of venue from Oakland County to Wayne County, when it was clear that the crime actually occurred in Wayne County and there were no contacts with Oakland County.

III.    The trial court committed reversible error in denying defendant's motion to dismiss pursuant to a constitutional speedy trial violation on the basis that the defendant's case was delayed for nearly twenty-six months, thereby infringing on the defendant's right to a speedy trial in a criminal prosecution pursuant to US Const Ams VI, XIV; Mich Const 1963 art.1, sec. 20, and MCL 768.1.

IV.    Defendant is entitled to a new trial where his trial attorney had a conflict of interest in representing the defendant when the prosecutor originally assigned to prosecute this case was in the same law office as his trial attorney, and that defendant was never advised of that conflict of interest or waived the conflict in open court, thus denying him his constitutional right to effective assistance of counsel.

V.     The prosecutor's deliberate introduction of testimony concerning crack cocaine before the jury, without a proper foundation to tie it to this case, was reversible error, thereby denying the defendant due process under the V and XIV Amendments to the United States Constitution and Mich Const 1963 art 1, § 17.

VI.    Defendant's non-parolable life sentence violates Michigan constitution because it is an indeterminate [sic] sentence and because it constitutes cruel or unusual punishment.

The Michigan Court of Appeals affirmed in an unpublished *per curiam* opinion. *People v. Wood*, 2003 WL 1558222 (Mich. App. Mar. 25, 2003). The petitioner filed a delayed application for leave to appeal in the Michigan Supreme Court presenting the same six claims. The supreme court denied

the petitioner's application for leave to appeal because it was not persuaded that the questions presented should be reviewed. *People v. Wood*, 469 Mich. 947, 671 N.W.2d 53 (2003).

On February 24, 2004, the petitioner filed a habeas corpus petition in this Court and presents the following claims:

I.    The state trial court judge in Macomb County severely erred in its discretion, when it permitted the prosecution to change venue from Macomb County to Oakland County, despite the fact that the prosecution failed to establish good cause for the change of venue, thereby circumventing law and thus violating petitioner's 14th amendment right under the U.S. Constitution.

II.   The trial court abused its discretion in denying petitioner's motion for change of venue from Oakland County to Wayne County when it was apparent that the offense actually occurred in Wayne County and there existed no contacts with Oakland County.

III.  The trial court's decision was erroneous where it denied petitioner's motion to dismiss on the premises that petitioner's constitutional right to a speedy trial was not violated, there existed nearly 26 months in delaying to bring petitioner to trial, thereby offending petitioner's right to a speedy trial in a criminal prosecution pursuant to U.S.Const Ams VI, XIV; Mich Const 1963 art.1, sec. 20; and MCL 768.1.

IV.   Petitioner is wholly entitled to a new trial, based upon the fact that, defense counsel harbored a conflict of interest in representing petitioner when the initial prosecutor assigned to prosecute this case was within the same law office as defense counsel and petitioner was never appraised [sic] or waived the conflict of interest in open court, therefore petitioner was deprived of his constitutional right to effective assistance of counsel.

V.    The state prosecutor intentionally introduced prejudicial testimony involving crack cocaine in the presents [sic] of the jury, without a sufficient foundation in which to link it to the case, petitioner's due process under the 5th and 14th amendments to the United States Constitution and Mich Const 1963 art 1, 17.

VI.   Petitioner's non-parolable mandatory life sentence violates Michigan's constitution [sic] guarantee where it is an indeterminate [sic] sentence and therefore cruel and or unusual punishment.

The respondent has filed an answer to the petition in which he asserts that no constitutional violations occurred in the state courts.

-4-

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court

shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating

that "[t]he court gives complete deference to state court findings of historical fact unless they are

clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as

follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus

relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision

unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court

defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also Davis v. Coyle*, 475 F.3d 761, 766 (6th Cir. 2007); *King v. Bobby*, 433

F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v.*

*Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

The petitioner's first claim is that the trial court abused its discretion and violated his constitutional right to due process when it transferred the case to Oakland County Circuit Court, and the Oakland County Circuit Court was therefore without jurisdiction to hear his case. The petitioner was originally charged in Macomb County, and the charges included one count of conspiracy to deliver over 650 grams of cocaine. After the suppression of certain statements made by the petitioner, the prosecutor moved to change venue to Oakland County, arguing that she could not prove the conspiracy charge tying the offense to Macomb County without those statements. On the record, the petitioner's trial counsel agreed with the prosecutor and stated that he had no objection to the transfer. After the transfer to Oakland County, trial counsel attempted to have the case moved to Wayne County and informed the court that he had objected to the transfer to Oakland County in off-the-record discussions and that his objection was lodged on the face of the transfer order. In the Order for Change of Venue, the line, "and Defendant having offered no objection," is crossed out.

On appeal to the Michigan Court of Appeals, the petitioner argued that the trial court abused its discretion in granting the motion because the prosecution had not established the requisite "good cause" required by the controlling statute, Michigan Compiled Laws section 762.7. The Michigan Court of Appeals held that trial counsel's on-the-record acquiescence was a waiver that extinguished any error and negated any prior or subsequent objections.

The respondent correctly argues that this claim is not cognizable in federal habeas corpus proceedings. The alleged failure to comply with state law does not amount to an actionable claim on habeas review. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Austin v. Jackson*, 213 F.3d 298, 300

(6th Cir. 2000).  The Court may grant a writ of habeas corpus only on the ground that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Robinson v. Stegall*, 355 F.3d 916, 917 (6th Cir. 2004).  "Determination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary." *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976) (citation omitted).  Likewise, a claim of improper venue that involves solely the interpretation of a state statute raises no federal question cognizable in a habeas corpus proceeding.  *Grandison v. Corcoran*, 78 F.Supp.2d 499, 514 (D. Md. 2000) (holding that transfer of murder trial from one state jurisdiction to another, even if improperly authorized under state law, was not cognizable on petition for federal habeas review).  The petitioner is not entitled to relief on this claim.

### B.

The petitioner next argues that the trial court abused its discretion in denying defendant's motion for change of venue from Oakland County to Wayne County.  After venue was changed to Oakland County, the petitioner unsuccessfully moved to change venue to Wayne County, arguing that venue was not proper in Oakland County because the arrest was made and the drugs were seized in Wayne County.  The motion was denied on the basis of Michigan Compiled Laws section 762.3(1), which provides that "[a]ny offense committed on the boundary line of 2 counties, or within 1 mile of the dividing line between them, may be alleged in the indictment to have been committed, and may be prosecuted and punished in either county."  Eight Mile Road, where the initial arrest occurred, is the boundary between Oakland and Wayne Counties.

The Michigan Court of Appeals agreed that the statute allowed prosecution in Oakland County, further noting that "Defendant had already consented to venue being in Oakland County."

-8-

Wood, 2003 WL 1558222, at *1.  Like the previous claim, the petitioner has not stated a claim that is cognizable in federal habeas corpus proceedings.  *Pulley*, 465 U.S. at 41; *Austin*, 213 F.3d at 300.  Issues of state jurisdiction and venue are matters of state law, and the petitioner is not entitled to relief on this claim.

C.

The petitioner next contends that the twenty-six month delay in bringing him to trial violated his federal and state constitutional rights to a speedy trial and his Michigan statutory right to trial within 180 days.  On the first day of trial, the petitioner moved to dismiss the charges against him, alleging that the delay between his arraignment and trial violated both his federal constitutional speedy trial rights and Michigan Compiled Laws section 780.131.  The petitioner argued that the delays rendered him unable to locate witnesses to his arrest.  Defense counsel acknowledged that he was responsible for an adjournment in August 2000.  The trial court denied the motion, finding that part of the delay was caused by the defense, and that the prosecutor had made a good faith effort to bring the case to trial.  The court further held that the 180-day statutory protection was inapplicable to parolees under *People v. Chavies*, 234 Mich. App. 274, 593 N.W.2d 655 (1999), and the petitioner was on parole at the time of his arrest.  The Michigan Court of Appeals affirmed the decision of the trial court.

The claim regarding the 180- day rule stated in Mich. Comp. Laws § 780.131 arises under state law and is not cognizable on federal habeas review.  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  It is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  A federal court is limited on federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties

-9-

of the United States.  *Ibid.*  A violation by state officials of a state speedy trial law, taken alone, does not present a federal claim reviewable in a habeas petition.  *Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998).  Federal consideration of a claim that a state has violated its own speedy trial rules must focus instead on whether the state's action has violated a petitioner's federal constitutional right to a speedy trial or due process.  *Millard v. Lynaugh*, 810 F.2d 1403, 1406 (5th Cir. 1987); *Wells v. Petsock*, 941 F.2d 253, 256 (3d Cir. 1991).  Michigan's 180-day statute is not coextensive with the petitioner's federal constitutional right to a speedy trial; a violation of that statute alone does not entitle the petitioner to habeas relief.

As to the Sixth Amendment speedy trial claim, the Michigan Court of Appeals ruled as follows,

> We also find no error in the circuit court's determination that defendant's constitutional right to a speedy trial was not violated.  First, although the delay of twenty-six months between arraignment and trial was lengthy, about eight months of the delay was attributable to the adjournment of an earlier August 2000 trial date pursuant to a request by the defense.  Moreover, although defendant maintains that he "consistently" asserted his right to a speedy trial, the record is devoid of any evidence of a prior request.  Although he argues that he was ready to go to trial on January 27, 2000, the record of the proceedings for that day does not show that defendant requested to be tried.  Instead, the record indicated that, rather than assert his right to a speedy trial, defendant consented to transfer venue to Oakland County that day, which clearly would have precluded a trial that same day.  The only time defendant appears to have asserted any right to a speedy trial was on the first day of trial when he moved unsuccessfully to dismiss the charges due to the delay.  Finally, we find no prejudice.  No causal link is evident between the delay and defendant's assertion that res gestae witnesses could not be located.  Under these facts, we find no violation of defendant's right to a speedy trial.

*Wood*, 2003 WL 1558222, at *2.

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial.  U.S. Const. amend. VI.  To determine whether a speedy trial violation has occurred, the court must consider the following four factors: (1) the length of the delay, (2) the reason for the delay, (3) the

defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Maples v. Stegall*, 427 F.3d 1020, 1025 (6th Cir. 2005). No single factor is determinative; rather the Court must weigh each factor and engage in a "difficult and sensitive balancing process" to determine whether a constitutional violation has occurred. *Wingo*, 407 U.S. at 533.

There is a threshold requirement that the delay be uncommonly long. A delay approaching one year is presumptively prejudicial. *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). In this context, the presumption of prejudice "does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* inquiry." *Ibid*. If this threshold is satisfied, judicial analysis continues, and the length of the delay becomes one factor in the analysis. *Doggett*, 505 U.S. at 652; *Schreane*, 331 F.3d at 553.

The petitioner urges this Court to calculate the time lapse as beginning with his original arrest on October 12, 1998. However, the record shows that the petitioner was released almost immediately without being charged. The Sixth Amendment does not limit the length of a pre-indictment criminal investigation even though the suspect's knowledge of an ongoing criminal investigation could cause stress, discomfort, and disruption of normal life. When defendants are not incarcerated or subjected to other substantial restrictions on their liberty, a court does not count that time towards a claim under the Speedy Trial Clause. *Unites States v. Loud Hawk*, 474 U.S. 302, 311-12 (1986). The Court therefore calculates the delay beginning with the March 1999 arrest date. The petitioner's trial did not begin until April 26, 2001, a delay of nearly twenty-six months. That delay plainly satisfies the threshold.

-11-

In assessing the cause for the delay, "[t]he core task is determining which party shoulders the balance of blameworthiness for th[e] delay." *United States v. O'Dell*, 247 F.3d 655, 667 (6th Cir. 2001). The Supreme Court has explained that

> different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

*Barker*, 407 U.S. at 531 (footnote omitted). Government actions that are tangential, frivolous, dilatory, or taken in bad faith weigh heavily in favor of a finding that a speedy trial violation occurred. *United States v. Loud Hawk*, 474 U.S. 302, 315-17 (1986).

Although the petitioner claims that the prosecution deliberately delayed trial for tactical advantage, the trial court found that the prosecution had acted in good faith. Although the Michigan Court of Appeals did not specifically address this finding, it did conclude that the trial court had not erred. Considerable delay was attributable to venue having been moved to Oakland County after the petitioner had spent nine months in the Macomb County jail. However, the record does not support the petitioner's claim that the prosecutor's motion to change venue was made in bad faith, and, as the Michigan Court of Appeals pointed out, the petitioner's trial counsel consented to the change on the record. Moreover, venue was delayed only after the plaintiff successfully argued a pretrial motion to suppress statements and won a dismissal of the conspiracy charge. The resolution of pretrial motions is a presumptively justifiable reason for delay. *See United States v. O'Dell*, 247 F.3d at 668 (citing *United States v. Schlei*, 122 F.3d 944, 987 (11th Cir.1997)).

The petitioner does not dispute the state court of appeals' finding that approximately eight months of the delay are attributable to the defense. The remaining eighteen months are attributable

-12-

to the State but without the heavier weighting given to deliberate or intentional delays.

The third factor is the vigor with which the petitioner asserted his speedy trial rights. "The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32. Likewise, a "[d]efendant's failure to assert his rights in a timely fashion weighs heavily against his Sixth Amendment claim." *United States v. Thomas*, 167 F.3d 299, 305 (6th Cir. 1999).

Although the petitioner claims that he consistently objected to the delay, the finding of the Michigan Court of Appeals that the only time that the petitioner asserted his right to a speedy trial was on the day of trial is fully supported by the record. The untimeliness of the assertion of the right therefore weighs against the petitioner.

The final factor to consider is prejudice. A petitioner must show that substantial prejudice resulted from the delay. *Schreane*, 331 F.3d at 557. Prejudice should be assessed in light of the following three defense interests that the speedy trial right protects: (1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; and (3) the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532. "Of these, the most serious is the last because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious." *Ibid*. "[If] the government prosecutes a case with reasonable diligence, a defendant who cannot demonstrate how his defense was prejudiced with specificity will not make out a speedy trial claim no matter how great the ensuing delay." *Schreane*, 331 F.3d at 559 (quoting *United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000)). When there is evidence of negligence on the state's part but no bad faith, "[judicial] toleration of such negligence varies inversely with its protractedness." *Doggett*, 505 U.S. at 657.

-13-

According to the applicable precedent, the portion of the delay attributable to the state's negligence, which is approximately eighteen months, does not give rise to a presumption of prejudice. *See, e.g., Schreane*, 331 F.3d at 559 (thirteen and a half month delay attributable to the government's negligence did not give rise to a presumption of prejudice); *United States v. Cook*, 181 F.3d 104 (6th Cir. 1999) (sixteen months not presumptively prejudicial).  When prejudice has been found, the government's delay has typically been shockingly long. *See, e.g.*, *Doggett*, 505 U.S. at 657 (six years); *United States v. Brown*, 169 F.3d 344, 351 (6th Cir. 1999) (five and one-half years); *United States v. Graham*, 128 F.3d 372, 376 (6th Cir.1997) (eight years); *see also Barker*, 407 U.S. at 532 (five year delay with all but seven months attributable to the government was extraordinary but did not violate the constitution where defendant did not assert his right until the day of trial).

The petitioner has alleged all three types of prejudice.  He no doubt suffered from the oppression of his pretrial incarceration and the anxiety and concern of waiting for trial, but he has not demonstrated specific or substantial prejudice in preparing his defense, and *Barker* requires a balancing of all of the factors.  The Michigan Court of Appeals applied the correct standard and its application was neither contrary to nor an unreasonable application of Supreme Court precedent.

### D.

The petitioner next claims that his constitutional rights were violated because his trial counsel had a conflict of interest.  This issue was first raised on appeal to the Michigan Court of Appeals.  The petitioner alleged that his trial attorney had an undisclosed conflict of interest and that his Sixth Amendment right to counsel had been violated.  He attached to his brief pages from the Michigan Bar Journal's roster of attorneys, published approximately one month before the petitioner's trial.  These pages showed that William Mitchell, the petitioner's trial counsel, and Paul

-14-

Stablein, former Oakland County assistant prosecutor, shared the same office address, telephone, and fax numbers and both had email addresses at "sherbowlaw.com." Mr. Mitchell's law firm was listed as "Sherbow and Mitchell," and Mr. Stablein's as "Law Offices of Paul J. Stablein, PC." Mr. Stablein had a minor role in handling the petitioner's case in the initial stages in Oakland County: he signed the information and the stipulation for production of palm prints, and he filed a response to the petitioner's motion for a change in venue and attended oral argument on that motion.

The Sixth Amendment provides that a criminal defendant shall have the right to "the Assistance of counsel for his defence." U.S. Const. amend. VI. A criminal defendant is entitled to the effective assistance of counsel free from conflict. *See Holloway v. Arkansas*, 435 U.S. 475, 483-84 (1978). The Sixth Circuit has summarized the difference between the more typical ineffective assistance of counsel claim and a claim based on an allegation that counsel was burdened by a conflict of interest as follows:

> Conflict of interest cases involve a slightly different standard than that used in traditional ineffectiveness claims. *See [Thomas v. Foltz*, 818 F.2d 476, 480 (6th Cir. 1987)]. Where there is conflict of interest, "counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties." *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052. Thus, when an actual conflict of interest exists, prejudice is presumed. *See id.* Prejudice is presumed, however, "only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* (*quoting Cuyler v. Sullivan*, 466 U.S. 335, 345-50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). Thus, while the rule is rigid, it is not a per se rule. *See id.*

*United States v. Hall*, 200 F.3d 962, 965 (6th Cir. 2000).

To prevail on a conflict of interest claim, a petitioner must point to specific instances in the record that suggest an actual conflict or impairment of his interests. *Olden v. United States*, 224 F.3d 561, 565 (6th Cir. 2000); *Thomas v. Foltz*, 818 F.2d 476, 481 (6th Cir. 1987).

The Michigan Court of Appeals held that "[t]his matter was not raised below" and was

therefore unpreserved.  It applied a plain error analysis and concluded as follows:

> It is not apparent from the record that an actual conflict of interest existed, that defendant was not informed of any potential conflict, MRPC 1.7(b)(2), that defendant did not waive any potential conflict, *id*, or that any conflict adversely affected counsel's performance.  On the contrary, the record indicates that defense counsel vigorously argued defendant's motion for change of venue to Wayne County, and there is no indication that he tempered his arguments due to any perceived connection with the assistant prosecutor.

*Wood*, 2003 WL 1558222, at *3.  The Court further noted that the Bar Journal indicated Mitchell and Stablein were associated with different law firms.

The state court decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.  There is nothing in the record, including the Bar Journal roster, to establish either an actual conflict of interest or that Mr. Mitchell's performance was adversely affected.  The fact that the former prosecutor was sharing office space with Mr. Mitchell does not establish divided loyalty.  There is no evidence that Mr. Mitchell and the lower court prosecuting attorney were associated in the practice of law, were financially interconnected, or shared confidential information.  There is no evidence that Mr. Mitchell had any incentive to temper his representation of the petitioner, and there is no indication that he did.  "A possibility of conflict is insufficient to establish a violation of [the petitioner's] Sixth Amendment rights, and no violation occurs where the conflict is irrelevant or merely hypothetical."  *Harbison v. Bell*, 408 F.3d 823, 836 (6th Cir. 2005) (citing *Moss v. United States*, 323 F.3d 445, 463-64 (6th Cir. 2003)).  The petitioner therefore has failed to establish that defense counsel operated under a conflict of interest or otherwise abandoned his duty of loyalty to the petitioner.  Habeas relief is not warranted on this claim.

The petitioner has requested an evidentiary hearing on this issue.  This Court may hold a hearing only if the petitioner's factual allegations, if proven, would entitle him to relief. 28 U.S.C. § 2254(e)(2)(B); *see Vroman v. Brigano*, 346 F.3d 598, 606 (6th Cir. 2003); *Byrd v. Collins*, 209

F.3d 486, 550 (6th Cir. 2000).  That standard has not been met, and no hearing is warranted.

E.

The petitioner next claims that the introduction of evidence concerning crack cocaine denied him a fair trial.  Farmington Hills Officer Farley, who testified as an expert in narcotics investigations, reported on direct examination, without objection, to the street value of a gram of powder cocaine.  When the prosecutor asked Farley to explain the difference between powder and crack cocaine, the defense objected unsuccessfully on the ground of relevance, arguing that there was no evidence that this powder was intended to be transformed into crack.  Over further relevancy objection, Farley described in detail how crack was made from powder cocaine, how it would be ingested, and how it would be packaged and priced.

On appeal to the Michigan Court of Appeals, the petitioner alleged that the introduction of this evidence was reversible error and violated his due process rights under the Constitution.  He claimed that the evidence was irrelevant and "merely inflamed the passion and prejudice of the jury," citing the applicable Michigan Rules of Evidence.  He further claimed that the prosecution's introduction of this testimony constituted prosecutorial misconduct.

The Michigan Court of Appeals found that only the relevancy argument was preserved in the trial court and concluded that the evidence was relevant to show profit motive.  It reviewed the prejudice argument for plain error, and found none:

> The case involved a large quantity of cocaine.  Defendant has not shown how mentioning a different form of cocaine inflamed the passions of the jury.  Indeed, the evidence was relevant to the intent to deliver element of the originally charged offense, but defendant was acquitted of that offense and found guilty of mere possession, thus indicating that the jury was not improperly influenced by the evidence.

*Wood*, 2003 WL 1558222, at *4.  The court of appeals did not address the claim of prosecutorial

-17-

misconduct or deprivation of federal due process. Where a state court has not addressed or resolved claims based on federal law, this Court reviews them *de novo*. *Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005); *McKenzie v. Smith*, 326 F3d 721, 727 (6th Cir. 2003).

It is well established that trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, generally do not serve as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only where admission of the disputed evidence rendered the trial "so fundamentally unfair as to deprive the petitioner of due process" will the writ of habeas corpus be granted. *Broom v. Mitchell*, 441 F.3d 392, 406 (6th Cir. 2006) (quoting *McAdoo*, 365 F.3d at 494). The state's evidence describing the manufacturing of crack cocaine did not render the trial fundamentally unfair.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999) (stating that "[p]rosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation"), *abrogated on other grounds by Mackey v. Dutton*, 217 F.3d 399, 406 (6th Cir. 2000). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). The Court must focus on "'the fairness of the

trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

Even assuming for the sake of argument that the testimony concerning crack cocaine was irrelevant, there is no likelihood that the jury would have been misled or prejudiced by it. The jury was informed repeatedly that the drug at issue was powder cocaine. Trial counsel elicited testimony from the witness that there was no evidence that the petitioner intended to transform the powder into crack. Moreover, it is unclear that a jury would regard crack cocaine as being significantly more dangerous than powder cocaine. And, as the court of appeals pointed out, the evidence went to the intent element of the original possession with intent to deliver charge, and the petitioner was acquitted of that charge. This record does not support a conclusion that the testimony rendered the trial unfair. The petitioner is not entitled to relief on this claim.

F.

The petitioner's final claim is that his sentence violates the constitution. The petitioner was sentenced under a repeat offender law requiring mandatory non-parolable life. The petitioner challenges the sentence as violating the Michigan Constitution, both because it is indeterminate and because it is cruel *or* unusual. Const 1963, art 4, § 45; Const 1963, art 1, § 16. The Michigan Court of Appeals rejected both arguments, holding that the Michigan Constitution permitted indeterminate sentences and that the sentence was not "cruel or unusual," given the habitual nature of the petitioner's conviction.

It is not the function of a federal habeas court to review a state court's interpretation of state law or the state's constitution unless the state court committed an error that deprived the petitioner of a federal right. *Mullaney v. Wilbur*, 421 U.S. 684, 691 n.11 (1975); *Wills v. Egeler*, 532 F.3d

-19-

1058, 1059 (6th Cir. 1976). This Court cannot conclude that the Michigan Court of Appeals' decision was fundamentally unfair since the United States Supreme Court upheld similar sentences in *Harmelin v. Michigan*, 501 U.S. 957 (1991), and *Rummel v. Estelle*, 445 U.S. 263 (1980). Rummel was convicted of obtaining $120.75 by false pretenses, a crime punishable by at least two years but not more than ten years in prison. He was sentenced as a recidivist to life imprisonment with the possibility of parole. His two prior felonies consisted of fraudulent use of a credit card to obtain $80 worth of goods and services, a felony punishable by two to ten years in prison; and passing a forged check for $28.36, a crime punishable by two to five years in prison. The Supreme Court held that Rummel's life sentence under the state recidivist statute did not constitute cruel and unusual punishment. In *Harmelin*, the Supreme Court upheld a life sentence without the possibility of parole for possession of more than 650 grams of cocaine for an offender with no prior felony convictions. Because the Supreme Court in *Harmelin* found a life sentence without parole for the possession of cocaine to be constitutional, the petitioner's sentence of life imprisonment cannot be considered extreme or grossly disproportionate to the crime. The petitioner is not entitled to relief on this claim.

III.

For the foregoing reasons, the Court finds the petitioner has not shown that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt # 1] is

**DENIED**.                                      s/David M. Lawson
                                                 DAVID M. LAWSON
Dated: March 23, 2007                            United States District Judge

-20-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 23, 2007.

s/Felicia M. Moses

FELICIA M. MOSES